Edmund C. Faulkner, J.
The complainant, a police officer, charged the defendant with having been intoxicated in a public place, to wit, police headquarters, in violation of section 1221 of the Penal Law. Upon the trial defendant admitted he was intoxicated when he was in such place but insisted that he was there only because he had been unwillingly brought there by police officers who had been called to a private apartment at 21 West Main Street maintained by one Mabel Ishultz, an acquaintance of the defendant. It appears that between 1:00 and 2:00 a.m. the defendant, who had been drinking, called at the Ishultz apartment and finding no one home went to sleep. Some time after 3:00 a.m. Miss Ishultz returned with one Thomas Lee, and the defendant hearing their voices, got up and began tusseling with Lee, who, the next day, charged him with an assault upon which charge he was convicted.
The questions arising are whether the police headquarters are a public place within the meaning of the statute and if so whether the defendant under the facts set forth, is guilty of the crime charged.
Under the judicial interpretations given to the phrase ‘ ‘ public place ’ ’ it would seem that police headquarters very reasonably come within the definition of a “ public place ” for during all hours of the day and night the police headquarters of a city are visited by persons having business to transact there. Particularly is this true in connection with the reporting of motor vehicle accidents and the answering of summonses issued for traffic violations. In People v. Soule (142 N. Y. S. 876) the court apparently adopted the language of Murchison v. State (24 Tex. 8) which was to the effect that the term ‘ ‘ public place ’ ’ embraced a place which is in point of fact, public as distinguished from private, a place which is accessible to the public and visited by many persons. In the Miirchison case it was held that a grand jury room was a public place.
The defendant had not voluntarily gone to any public place, including the police headquarters as such. He had been urged to accompany the officers there. Unquestionably had he his way, that destination would have been the least appealing. I believe that the statute in question was enacted to keep intoxicated persons from voluntarily going to public places where they were likely to annoy, molest or disgust the people who were likely to be found there. In State v. Sevier (117 Ind. *327 338, 340) the court said, “ The offense does not consist in being found in a state of intoxication, but in being found in a public place in a state of intoxication.”
The only New York authorities I have come across in connection with this subject are People v. Brown (64 Misc. 677) and People v. Soloman (57 Misc. 288). The facts in the instant case are practically parallel with those in People v. Brown. The court held that the defendant could not be convicted of the crime of being intoxicated in a public place when it appears that an officer, without a warrant, arrested him while he was lying down in a private house and had taken him along a public street to jail.
I am in complete agreement with this view and consequently dismiss the complaint against the defendant.